UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-01889-WYD

MORRIS J. JIRON,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,[1]

      Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

      THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's application for Supplemental Security Income Benefits under the

Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383c.  Plaintiff was born in

November 1958, and was 45 years old on the date of the ALJ's decision.  (Transcript

["Tr."] 26, 68.)  He has a high school education and has no vocationally relevant past

work that he can perform.  (Tr. 26, 34.)

      Plaintiff alleges that he became disabled in September of 1998 due to major

depression, anxiety disorder, panic attacks, agoraphobia, obsessive compulsive

disorder, left lower extremity neuropathy, L5 radiculopathy on left, hypertension,

hyperlipidemia, and chronic lower back pain.  (Tr. at 75.)  Plaintiff's application filed in

_____

      [1] Michael J. Astrue, the current Commissioner of Social Security, has been substituted for
former Commissioner Jo Anne B. Barnhart pursuant to FED. R CIV. P. 25(d)(1).

May 2001 (tr. 68-72) was denied initially.  (Tr. 50-53).[2]  After a hearing (tr. 321-48), the

Administrative Law Judge ["ALJ"] determined on March 4, 2004, that Plaintiff was not

disabled because he retained the residual functional capacity ["RFC"] to perform a

limited range of sedentary work that existed in significant numbers in the national

economy.  (Tr. 34.)  The Appeals Council declined review of the ALJ's determination (tr.

6-8), making it the Commissioner's final decision for purposes of judicial review.

II.    THE ALJ'S DECISION

        The ALJ found at step one of the five-step sequential analysis required by law

that Plaintiff has not engaged in substantial gainful activity since May 30, 2002 and

continuing through the date of the decision.  (Tr. 26.)

        At steps two and three, the ALJ found that the medical evidence establishes that

the claimant has severe impairments, but does not have an impairment or combination

of impairments listed in, or medically equal to, one listed in Appendix 1 to Subpart P,

Regulation Number 4.  (Tr. 31, 34.)

        In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform a "range

of sedentary work."  (Tr. 33.)  He further found that Plaintiff:

> retains a RFC for seated jobs with lifting and carrying up to 10 pounds
> and jobs without foot or leg controls.  He can frequently sit and he can
> occasionally stand and walk.  He can perform unskilled jobs where he can
> use a cane as needed for ambulation.  He can perform jobs where he can
> avoid squatting kneeling, climbing and dealing with the general public.

(*Id.* 32-34.)  While the ALJ accepted that Plaintiff had some mental impairments,

---

        [2]  Plaintiff's application was selected to be part of the pilot project under 20 C.F.R. § 416.1406
(2005), whereby after the initial determination, the claim proceeded to an administrative hearing.

including moderate limitations in activities of daily living, social function, concentration, persistence and pace (*id.* at 31), these were not included in the RFC.  The ALJ also found that Plaintiff's allegations that his impairments produce symptoms/limitations of sufficient severity to prevent work activity is not credible.  (*Id.* at 34.)

At step four, the ALJ found that the claimant has no past relevant work that he can perform.  (Tr. 26, 33.)

At step five, the ALJ assessed Plaintiff's age, education and work history and exertional capacity for sedentary work.  (Tr. 33.)  He found that if Plaintiff was able to perform the full range of sedentary work, Medical-vocational Rules 201.27 and 201.21, Table Number 1, Appendix 2 to Subpart P, Regulation Number 4, would direct a finding of not disabled.  (*Id.*)  Since Plaintiff's limitations did not allow him to perform a full range of sedentary work, the ALJ called a vocational expert ["VE"] to testify at the hearing.  (*Id.*)  Relying on the testimony of the VE, the ALJ found that there are a significant number of jobs that Plaintiff could perform in the national economy.  (*Id.*)  Examples of such jobs include sedentary unskilled assembler, sedentary unskilled surveillance system monitor, and sedentary unskilled envelope addressor.  (*Id.*)  The ALJ thus found that Plaintiff was not disabled at any time through the decision.

III.   ANALYSIS

A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*

*v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of

evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d

802, 804 (10th Cir. 1988).  "Evidence is not substantial if it is overwhelmed by other

evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d

1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487

(10th Cir. 1993).  Although the court should carefully examine the record, it may not

weigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

B.    Whether the ALJ's Decision is Supported by Substantial Evidence

1.    Whether The ALJ Properly Weighed the Medical Evidence

Plaintiff argues that the ALJ's analysis is difficult to track, but the result is that

the state agency physicians overrule the treating and examining physicians.  Four

treating physicians and an examining psychologist reached the conclusion that Plaintiff

could not perform substantial gainful activity ["SGA"]—Dr. Nelson (tr. 225), Dr. Wilcox

(*id.* 304-305), Dr. Corson (*id.* 303), Dr. Pezzarossi and his associate Larry Courter (*id.*

167), Meryle D. Friedman (*id.* 180) and Dr. Parsons (*id.* 159).  Indeed, it is argued that

Dr. Parson's opinion to which the ALJ assigned weight shows that Plaintiff lacks the

RFC to perform even basic work activities.  Further, it is argued by Plaintiff that

Dr. Parsons' opinion that Plaintiff has a GAF of 35 is indicative of a mental level of functioning far below what is required for sustained full-time work.

Plaintiff argues that while the ALJ relied upon Dr. Parsons' opinion, he failed to apply or consider Dr. Parsons' statements of disability, including the extreme limitations regarding Plaintiff's social interactions in the workplace and his ability to adapt to changes in his life and in the workplace.  Plaintiff asserts that since the ALJ gave greatest weight in the record to an examining psychologist's opinion that supports his disability, he should be found disabled, particularly in the face of four treating/examining physicians' opinions that essentially agree with Dr. Parsons.

Plaintiff concludes that sufficient relevant evidence that a reasonable mind might deem adequate to support the ALJ's ultimate conclusion is not present here.  He argues that the ALJ should have given the disability opinions of Dr. Parsons and the other treating physicians controlling weight since the opinions were supported by the treatment and not inconsistent with other substantial evidence in the record.  He also argues that even if the ALJ was somehow justified in not giving the treating physicians controlling weight, their opinions were still entitled to deference, particularly given Dr. Parsons' supportive opinion, and that the ALJ failed to properly weigh the factors in 20 C.F.R. § 416.927(d)(2).

Finally, as to the state examiners, Plaintiff argues that the ALJ's reliance upon their assessments is not substantial evidence of RFC.  Thus, the ALJ's decision to give weight to the state agency physicians' opinions (including Drs. Chaing and Walker (tr.

198, 161, 164) is clearly erroneous.  Further, it is argued that the ALJ failed to weigh certain opinions of the consultative examiners that supported a disability.

I agree with Plaintiff that the ALJ failed to properly weigh the opinions of the treating and examining physicians, as discussed below.

> a.  Opinions of Dr. Parsons, Dr. Chaing and Dr. Walker that the ALJ Assigned the "Greatest Weight" To

I first address the opinions of consultative physician Dr. Parsons and the nonexamining expert sources Dr. Chiang and Dr. Walker as to Plaintiff's mental impairments, to which the ALJ assigned the "greatest weight".  (Tr. 31, 33.)  On November 5, 2001, Dr. Parsons performed a psychiatric status evaluation for the state agency.  (*Id.* 156-160.)  He made various findings as to Plaintiff's "employability skills", and diagnosed Generalized anxiety disorder with depression, rule out agoraphobia; Personality disorder (NOS) with mixed features of borderline and dependent personality disorder; Problems in virtually all areas of adaptive functioning; and a Global Assessment of Functioning ["GAF"] score of 35.  (*Id.*)

On November 26, 2001, State Agency physician E. Chaing, M.D. opined that Plaintiff had a number of moderate limitations (tr. 196-197) and stated that Plaintiff's mental status included  "anxious mood, obsessive thought process . . . ."  (*Id.* at 198.)  He diagnosed "Generalized Anxiety Disorder and Personality Disorder NOS" with a history of three suicidal gestures.  (*Id.*)  Dr. Chiang also noted, "Activities of Daily Living are impaired by anxiety and dependent traits. Socially he is isolated due to anxiety. He would have some difficulty with concentration due to anxiety. Allegations of anxiety,

depression, and obsessive traits are credible." (*Id.*) He concluded that Plaintiff "is capable of work that is not too demanding that does not have much contact with the general public." (*Id.*)

A Psychiatric Review Technique Form ("PRTF") prepared in November 2001 found that Plaintiff had moderate limitations as to restrictions of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. (*Id.* 210.) Dr. Walker stamped the form indicating that he affirmed the report. *Id.* 200.) Also on December 14, 2001, a state agency physician (whose signature is illegible) agreed with the PRTF. (*Id.* 161-165.)

As stated previously, the ALJ gave the "greatest weight" to the opinions of Drs. Parsons, Chaing and Walker regarding Plaintiff's "mentally based limitations". (Tr. 31, 33.) The ALJ found that the assessments of Drs. Chaing and Walker "have strong and well-reasoned support in the consultative examination conducted by Dr. Parsons." (*Id.* at 31.) Consistent with those opinions (at least to some extent), the ALJ found that the claimant "has moderate limitations in activities of daily living, social function, concentration, persistence and pace." (*Id.* at 31.) However, the ALJ failed to include in the RFC many of the substantial impairments that Drs. Parsons and Chaing found. (*Id.* at 34.) He also failed to include many of these impairments in the hypothetical question to the VE. (*Id.* 343.) This is error. *See Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993) (testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence); *see also Wiederholt v. Barnhart*, No. 03-3251, 2005 WL 290082, *5 (10th Cir. 2005) ("[b]ecause

the ALJ omitted, without explanation, impairments that he found to exist     . . ., the resulting hypothetical question was flawed").

The RFC and hypothetical question did state that Defendant was limited to jobs where he could avoid the general public, and the hypothetical question also included a limitation of "no complex tasks". (*Id.* at 34, 343). While these limitations are supported by the opinion of Drs. Chaing and Parsons, the ALJ did not address or include in the RFC other things noted by these doctors.

For example, Dr. Parsons found that Defendant's employability skills and social interactions in the workplace would likely be hampered by his high levels of anxiety; he has a tendency to become verbally and physically aggressive when he feels threatened; his ability to relate to supervisors was likely to be impaired; depression, memory problems and other difficulties may interfere with his ability to work on a full-time basis; and his ability to adapt to changes in the workplace are likely to be significantly limited. (Tr. 159.) Dr. Chaing found, among other things, that Plaintiff would have moderate difficulties in maintaining regular attendance at work and being punctual with customary tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.* 196-197.) The ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability." *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 n. 2 (10th Cir. 2004); *see also Threet v. Barnhart*, 353

F.3d 1185, 1190 (10th Cir.2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring ⋯ evidence").

Further, the ALJ did not address the GAF score of 35 assigned by Dr. Parsons. "Standing alone, a low GAF score does not necessarily indicate an impairment seriously interfering with a claimant's ability to work." *Lee*, 2004 WL 2810224, at *3. However, "[a] GAF score of fifty or less . . . does suggest an inability to keep a job." That score should not have been ignored, particularly since it was substantiated to large extent by the GAF scores of 49 and 50 assigned to Plaintiff by treating physician Dr. Pezzarossi and Larry Courter, scores which also show significant impairments.[3]

I find that the ALJ's errors in ignoring portions of the assessments of Dr. Parson and Dr. Chaing are compounded since their opinions about limitations in Plaintiff's employability skills were substantially supported by Plaintiff's treating and examining physicians.  Treating psychiatrist Dr. Pezzarossi and clinical therapist Larry Courter (both employed by Counseling Associates, Inc.) opined that Plaintiff has Major Depressive Disorder and a Panic Disorder with Agoraphobia, and assigned GAF scores showing significant impairments, as noted above.  (Tr. 167, 172, 180.)  They concluded that Plaintiff's "depression, memory issues, headaches, and panic attacks" precluded him from participating "in work, classes, or school".  (*Id.* 167.)  Treating psychiatrist Dr. Corson opined that Plaintiff was "emotionally disabled" due to post

---

[3]  A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job).  *Id.* (quoting Diagnostic and Statistical Manual of Mental Disorder 34 (4th ed. 2000)).

traumatic stress disorder ["PTSD"], depression, anxiety, and obsessive compulsive disorder ["OCD"]. *Id.* 303.)  Dr. Nelson opined that Plaintiff should be released from work requirements because of many health issues, the most significant of which was "depression with agoraphobia as well as anxiety attacks" and PTSD that limited his ability to work. (*Id.* 225).  Finally, Meryle D. Friedman, a counselor, also found Plaintiff had an "employment difficulty" with a GAF of 49.  (*Id.* 180.)[4]

Despite the fact that these opinions are largely consistent with Dr. Parsons' opinion to which the ALJ assigned weight, it appears that the ALJ chose to reject their findings completely.  The ALJ stated in that regard:  "[t]he claimant's examining and treating sources for his mentally based complaints have offered the claimant numerous medical source statements, but those statements bear little resemblance to the actual clinical records accumulated by those sources."  (Tr. 33.)  The ALJ failed to explain why he chose to reject the treating physicians' opinions to the extent they were consistent with Dr. Parsons' opinions, or why he accepted only a part of Dr. Parsons' opinions (if that is, in fact, what he did).  This is also error that requires remand.[5]

I also note that to the extent that the ALJ relied on the opinion of Dr. Chaing or other nonexamining mental health practitioners for his conclusion that Plaintiff "is capable of work that is not too demanding that does not have much contact with the

---

[4]  If Merle Friedman was not an "acceptable medical source" under the regulations, her opinion was still to be considered although it is entitled to less weight than that accorded to the opinions of acceptable medical sources.  *See Komar v. Apfel*, No. 97-5125, 1998 WL 30267, *2 (10th Cir. 1998) (citing 20 C.F.R. § 416.927(d); SSR 96-5P, 1996 WL 374183, at *1).

[5]  I address below whether the ALJ otherwise failed to properly weigh the treating and examining physicians' opinions.

general public", this does not appear to be supported by evidence from the examining physicians, as noted above, including Dr. Parsons' opinion.  Absent such support, the ALJ was not entitled to rely on these opinions for his RFC assessment.  *Lee*, 2004 WL 2810224 at * 3 (if the ALJ relies heavily on opinions of an agency medical consultant that did not examine the claimant, those "opinions must themselves find adequate support in the medical evidence").

        b.      Whether the ALJ Properly Weighed the Other Medical Evidence

        i.      General Findings

As to treating physicians, an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'"  *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted); *see also* 20 C.F.R. § 404.1527(d)(2). When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around."  *Goatcher v. U.S. Dept. of Health and Human Services*, 52 F.3d 288, 290 (10th Cir. 1994).

"The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled."  *Id.*  Generally, the ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical

judgment for that of mental health professionals. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996). However, a treating physician's report can be rejected "if it is brief, conclusory and unsupported by medical evidence" or is "not supported by specific findings." *Castellano v. Sec. of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

I find numerous errors in connection with the ALJ's weighing of the treating physicians' opinions and other medical evidence. I first note that the ALJ never specifically stated what weight he was giving to the opinions of the treating physicians and other medical evidence. This is error that requires remand. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("'an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight'") (quotation omitted). Even when an ALJ decides that a treating physician's opinions are not entitled to controlling weight, that does not allow him to reject their opinions outright. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004). Instead, their opinions are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'" *Id.* (quotation omitted). The ALJ's decision did not reflect that he gave deference to the treating physician's findings and weighed them, or that he gave "any consideration of what lesser weight the opinion should be given or discuss[ed] the relevant factors set out in [42 U.S.C.] § 404.1527." *Id.*

I also note, as described previously, that the treating and examining physicians offered opinions that substantiated, at least in part, Dr. Parsons' findings as well as, to a lesser extent, those of Dr. Chaing . The ALJ failed to describe why he rejected those findings to the extent they supported the opinions of the physicians that he gave weight to.

The ALJ also states that the medical source statements "all appear to rely quite heavily on the claimant's own portrayal of his symptoms and limitations rather than objective clinical signs and findings." (Tr. 32.)  Thus, the ALJ appeared to reject the statements on that basis.  That is also error.  *See Langley*, 373 F.3d at 1121 (an ALJ is not entitled to reject an opinion based on his own speculative conclusion that the report was based only on the claimant's subjective complaints).

Finally, the ALJ also stated that "the claimant's examining and treating source for his mentally based complaints have offered the claimant numerous medical source statements, but those statements bear little resemblance to the actual clinical records accumulated by those sources." (Tr. at 33.)  The ALJ gave no explanation as to this as to many of the medical sources, which I also find to be error.  The ALJ may not make conclusory opinions in connection with his weighing of treating physicians' opinions.  I now turn to the specific physicians that examined Plaintiff and the ALJ's weighing of same.

ii.    <u>Dr. Pezzarossi and Larry Courter</u>

Defendant underwent individual psychological therapy with Counseling Associates, including Dr. Pezzarossi and Mr. Courter, from October 18, 2000 to

September 30, 2001.  (Tr. 167-195, 283-289.)  It is unclear from the record how many times he saw these practitioners, although it appears to be fairly infrequent.  Plaintiff presented initially with symptoms including depressed mood, diminished interest in most activities, sleep disturbances causing fatigue, low self esteem, poor concentration, hopelessness, excessive worry, feelings of being overwhelmed, fear of losing control, claustrophobia and not wanting to be in crowds or go out in public.  (*Id.* 179.)  The diagnosis was Major Depressive Disorder, Moderate, and Panic Disorder with Agoraphobia with a GAF of 49.  (*Id.*)

About a year later, Larry Courtier reported the following symptoms still persisted: episodes of being overwhelmed, excessive worry, paranoia, fear of losing control, inability to focus and concentrate, claustrophobia, not wanting to be in public or crowds and periods of extreme anger.  (Tr. 171).  The diagnosis was Obsessive-Compulsive Disorder (with Trichotillomania) and Panic Disorder with Agoraphobia with a GAF of 50.  (*Id.* 172.)  It also appears that Plaintiff had contact with practitioners at Counseling Associates in January 2002 and April 2002.

I find that the ALJ did not properly weigh the opinions of Dr. Pezzarossi and his associates.  While the ALJ gave specific, legitimate reasons for giving no weight to their opinions, I find that these reasons are not supported either legally or by the record.  First, the rejection of their opinions because they were unsupported by clinical signs and findings is error, since their diagnoses may rest either on observed signs and symptoms or on psychological tests.  *Thomas v. Barnhart*, No. 04-7141, 2005 WL 2114163 at *4 (10th Cir. 2005).  Here, the opinions relied on observed signs and

symptoms of the Plaintiff, some of which properly came from Plaintiff's subjective statements, and it appears other testing was also done. (Tr. at 171-72, 177, 193, 286-88.) Thus, I find that this reason given by the ALJ to reject their opinions is not supported by substantial evidence.

The ALJ also appeared to reject the opinions of Dr. Pezzarossi and his associates based on the length of the treatment relationship. However, Plaintiff was treated over a period of eleven months by them and Dr. Pezzarossi prescribed medications for the diagnoses which the ALJ appeared to accept as severe. (Tr. 31, 167-195, 283-289, 31, 167.) The ALJ failed to note this. Further, the ALJ should have evaluated whether Plaintiff's level of anxiety affected his ability to even go receive treatment, since there was evidence in the record of same. (*Id.* 171-172, 180.) The ALJ also found that the claimant "made only brief, superficial contact" in January 2002 and April 2002. (Tr. 29.) This is a speculative conclusion that is not supported by the record. The rejection of Dr. Pezzarossi's opinions based on lack of treatment relationship is particularly suspect as the ALJ gave greatest weight to the opinion of Dr. Parsons (*id.* 33), who only saw Plaintiff once and whose opinion is supportive of Dr. Pezzarossi. Further, the ALJ relied on opinions of Drs. Chaing and Walker who did not examine Plaintiff at all.

Even if there was not a relationship of sufficient duration and frequency to qualify Dr. Pezzarossi as a treating physician, this did not entitle the ALJ to reject his opinions outright. Instead, his opinions are "'still entitled to deference and [should have been] weighed using all of the [relevant] factors.'" *Langley*, 373 F.3d at 1120 (quoting

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  Thus, the ALJ's opinion should have reflected that he gave Dr. Pezzarossi's reports deference and weighed them, and that he gave consideration to "what lesser weight the opinion should be given or discussion of the relevant factors set out in [42 U.S.C.] § 404.1527."

The Commissioner also argues that the ALJ correctly found that the opinion of Dr. Pezzarossi and Mr. Courter was not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the Commissioner.  However, "opinions from any medical source on issues reserved to the Commissioner must never be ignored."  *Miller v. Barnhart*, 43 Fed. Appx. 200, 2002 WL 1608452, at *3 (10th Cir. 2002).  "The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."  *Id.*

### iii.   Dr. Nelson

The ALJ also erred by not stating what weight he was giving treating physician Dr. Nelson's findings.  It appears that he discounted these findings and Dr. Nelson's disability opinion entirely.  Dr. Nelson stated that Plaintiff had "numerous medical issues that impact[ed] his ability to work[]," including chronic lower extremity pain and weakness due to a peripheral neuropathy with an L5 radiculopathy on the left side, hypertension and hyperlipidemia, depression with agoraphobia, anxiety attacks, and a history of PTSD.  (Tr. 225; *see also* ALJ's decision at 28-29.)  The ALJ noted in response that Dr. Nelson apparently did not rule out all work activity.  (*Id.* 28.)  To the extent it was unclear to what extent Dr. Nelson thought the medical issues would

impact work, the ALJ should have contacted Dr. Nelson on that issue rather than simply discounting the opinion.  Moreover, the ALJ ignored Dr. Nelson's finding that Plaintiff's mental impairments would impact Plaintiff's ability to work regularly.  This also should have been considered.

I also note that Dr. Nelson's reference to certain physical and mental impairments as being "improved" or "stable" from a medical perspective does not necessarily mean that they are controlled in a manner that would allow Plaintiff to work regularly, and the medical records often refer to problematic symptoms.  For example, Dr. Nelson noted that Plaintiff's "anxiety is still problematic", that Plaintiff is still having problems with anxiety that are significant, Plaintiff reported having four anxiety attacks in the last month which was a "significant improvement", and Plaintiff's left lower extremity neuropathy which was supported by objective findings was "long standing", and "continues to bother him".  (*Id.* 227, 231, 233, 244, 247.)  The ALJ should have considered this evidence.

Finally, the fact that Plaintiff's mental health issues were being treated primarily by other health care professionals (*id.* 28) does not mean that Dr. Nelson's findings on these issues can simply be ignored.  They are still entitled to deference and should be properly weighed, particularly in light of the fact that the findings are largely consistent with the other professionals' opinions.

iv.   <u>Dr. Corson</u>

As noted earlier, Dr. Corson opined that Plaintiff was "emotionally disabled" due to post traumatic stress disorder (PTSD), depression, anxiety, and OCD.  (Tr. 303.)  I

-17-

find that the ALJ also improperly failed to weigh this evidence.  First, while he stated that he would consider Dr. Corson's clinical records, he did not state what weight he was giving these records.

Second, while the ALJ found that Dr. Corson's finding of disability was not supported by her clinical records, he appeared to selectively pick out portions of the records that supported his findings and ignored those that did not.  This was improper. *Lee v. Barnhart*, 2004 WL 2810224, at *3.  For example, while the ALJ stated that Dr. Corson's records showed Plaintiff was "stable and without homicidal or suicidal ideation" and "was getting good support from his wife and he was without any perceptual distortion", he ignored the fact that Dr. Corson only found Plaintiff "somewhat stable" and noted that he has "chronic symptoms."  (Tr. 291.)  Further, Dr. Corson noted that Plaintiff was suffering from daily panic attacks and "has a lot of anxiety and sadness, and some flashbacks to numerous events and memories."  (*Id.* 292.)

The ALJ also found that it was "unknown what Dr. Corson might mean by emotionally disabled."  (*Id.* 30.) If the records were unclear as to the basis of Dr. Corson's finding that Plaintiff was emotionally disabled, the ALJ should have contacted Dr. Corson to determine the basis for her finding rather than simply discounting her opinion on this issue.  See *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citing 20 C.F.R. § 404.1512(e)(1) (2001)).

The ALJ further noted, without explanation, that Dr. Corson's opinion was inconsistent with the record and is not well supported.  However, there is ample

-18-

evidence in the record that supports Dr. Corson's findings.  As discussed previously,

Dr. Pezzarossi and clinical therapist Larry Courter concluded, among other things, that

Plaintiff's "depression, memory issues, headaches, and panic attacks" precluded him

from participating "in work, classes, or school".  (Tr. 167.)  Treating psychiatrist

Dr. Nelson opined that Plaintiff should be released from work requirements based on,

among other health concerns, Plaintiff's "depression with agoraphobia as well as

anxiety attacks" and PTSD that limits his ability to work.  (*Id.* 225).  Finally, Meryle D.

Friedman, a counselor, also found Plaintiff had an "employment difficulty" with a GAF of

49.  (*Id.* 180.)  The ALJ improperly did not take this evidence into account in deciding to

reject Dr. Corson's findings outright.

v.   <u>Dr. Wilcox</u>

As to Dr. Wilcox, an examining physician, she issued a July 2003 medical

assessment that Plaintiff could not engage in an occupation or training as a  result of

medical conditions, including anxiety/PTSD/depression.  (Tr. 304-05.)  She also

checked a box for "sedentary" work when asked about work tolerance.  (*Id.*)  The ALJ

rejected Dr. Wilcox's opinion that Plaintiff was unable to engage in any occupation or

training, but gave "some weight" to her indication that Plaintiff's work tolerance was

"sedentary".  (*Id.* 30.)  This is not supported by the record.  While Dr. Wilcox checked

"sedentary" in connection with work tolerance, there was no ability in that section to

state that Plaintiff was unable to work.  However, she made it clear in an earlier section

of the report that Plaintiff was actually unable to work.  The ALJ thus gave improper

weight to the "sedentary" finding.

As to the fact that Dr. Wilcox only conducted a one-time examination or made diagnoses that were not supported by clinical findings or diagnostic studies (*id.*), this does not allow the ALJ to simply disregard the opinion.  He still must weigh the opinion properly.  Further, Dr. Wilcox indicates that she examined Plaintiff (*id.* 504), which must be taken into account by the ALJ.

    2. <u>Whether The ALJ Failed to Correctly Assess Plaintiff's RFC</u>

Based on my finding that the ALJ did not properly weigh the medical evidence, including the evidence on Plaintiff's mental impairments, I find that the RFC must be reassessed on remand.  Further, I note that the ALJ also did not even state at step two what specific severe impairments that Plaintiff had, which is error.

On remand, the ALJ shall properly assess all of Plaintiff's impairments, both mental and physical, and shall state specifically which impairments are found to be severe.  As to the RFC, in addition to the numerous mental impairments that the medical sources found, the ALJ must properly assess Plaintiff's physical impairments, including his neuropathy at L5 and left knee derangement which cause him left foot drop (tr. 304) and to fall (*id.* 106, 328, 342) unless using a cane for support.  (*Id.* 227, 327-328.)  Further, the ALJ shall consider the effects of Plaintiff's medication, his obsessive compulsive disorder (*Id.* 115, 159, 290, 297, 298) and post-traumatic stress disorder (*id.* 225, 303), his panic attacks and history of suicide attempts, and any other impairments supported by the record.  Finally, the ALJ shall assess the impairments in combination, and assess Plaintiff's RFC for work activity on a regular and continuous basis.  20 C.F.R. § 416.945(b).

3.    Whether the ALJ's Credibility Determination was Faulty

Plaintiff argues that the ALJ failed to link his pain and credibility findings to relevant evidence.  I agree.  Thus, Plaintiff's credibility must also be reassessed on remand.

Turning to the ALJ's decision, he found that Plaintiff's allegation that his impairments produce symptoms and limitations of sufficient severity to prevent all work activity is not fully persuasive and credible for a number of reasons.  (Tr. 32.)  First, he stated that Plaintiff's allegation was "inconsistent with the medical and other evidence." (*Id.*)  He also stated that Plaintiff "has described greatly limited daily activities but it is difficult to attribute those limitations to the objective clinical record."  (*Id.*)  In making these findings, the ALJ ignores the fact that the vast majority of treating and examining physicians, including Dr. Parsons whose opinion the ALJ gave weight to, found that Plaintiff was unable to work based on his impairments.  Further, Dr. Chaing, to whom the ALJ assigned great weight, opined that Plaintiff's "[a]llegations of anxiety, depression and obsessive traits are credible."  (*Id.* 198).  The ALJ failed to take that finding into account.  Accordingly, those credibility findings are not based on substantial evidence.

I also agree with Plaintiff that the ALJ erred as to credibility by  finding that Plaintiff suggested to his treating physicians "changes in his prescribed medications and in some cases, he almost seems to be directing this activity himself."  (*Id.* 32)  This finding is not linked to any evidence in the record, and appears to be the ALJ's own speculative conclusion.  Another speculative conclusion is the ALJ's finding that

-21-

Plaintiff sought medical treatment "primarily in order to generate evidence for this application and appeal, rather than in a genuine attempt to obtain relief form the allegedly disabling symptoms." (*Id.*)  This finding is completely unsupported, as all of the medical sources found that Plaintiff had real, significant impairments which were documented in the record.  Further, the ALJ accepted many of these impairments as severe, meaning that they would probably need medical treatment.

Further, as stated previously in this Order, it is improper to reject opinions of medical sources because they are based primarily on a claimant's subjective claimants.  Thus, it was improper for the ALJ to find Plaintiff not credible based on this reason. (*Id.*)  The fact that there are gaps in treatment (*id.*) needs to be considered in context with Plaintiff's mental impairments, including his anxiety about leaving the home and panic attacks.  The ALJ also found that Plaintiff's "reported earnings show that he has not demonstrated a sustained interest in gainful employment for many years" and that "[t]his raises the likelihood that there is some reason other than his impairments for his current lack of employment." (*Id.*)  However, the ALJ failed to take into account that Plaintiff had other injuries that could have been the reason for his poor earnings, including back injuries in 1998 and 2002.  (*Id.* 329, 336.)  Further, the ALJ ignored the conclusion of a New Mexico state vocational rehabilitation counselor that there was no work for Plaintiff at that time (*id.* 333.), and the evidence that Plaintiff did engage in some subsistence work.  (*Id.* 326).

Finally, I find that the ALJ failed to conduct a proper pain analysis, and failed to consider the impact of Plaintiff's pain, dizzy spells, anxiety attacks and numerous other

nonexertional impairments on Plaintiff's ability to work.  Indeed, while the ALJ noted

that he needed to do such an analysis, he made no particular conclusions as to the

impact of pain and the other nonexertional limitations on Plaintiff's ability to work.

4.      Whether the ALJ Satisfied Her Burden at Step-Five

I also find error at step five.  As noted previously, the ALJ's hypothetical

question failed to include the limitations set forth by Dr. Parsons upon which the ALJ

placed "greatest weight".  (Tr. 33.)  He also failed to include (and failed to explain why

he failed to include) many limitations found by Drs. Chaing and Walker.  (*See*, *e.g.*, Tr.

159.)  Upon remand, the ALJ must also assess all of Plaintiff's impairments and present

a proper hypothetical question to the VE.

IV.   CONCLUSION

Based upon the errors described above, I find that this case must be reversed

and remanded to the Commissioner for further fact finding and analysis.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for a rehearing pursuant to 42 U.S.C. § 405(g).

Dated March 14, 2007

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge

-23-